IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MICHAEL PAK** | § | Case No. 13-42442 |
| xxx-xx-8690 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| KEITH BROWN | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 14-4001 |
| | § | |
| MICHAEL PAK | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Keith Brown ("Plaintiff"),

seeking a determination of whether an alleged debt owed to him by the Defendant-

Debtor, Michael Pak ("Pak" or the "Defendant"), is dischargeable, the Court issues the

following findings of fact and conclusions of law.  The Plaintiff contends that the debt is

nondischargeable under the alternative grounds set forth in 11 U.S.C. §523(a)(2)(A) and

§523(a)(4).  After the trial, the Court took the matter under advisement.  This decision

disposes of all issues pending before the Court.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not
be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion,
the law of the case or as to other applicable evidentiary doctrines.

## *FINDINGS OF FACT*

1.      The complaint seeks a determination of the dischargeability of the debt owing by the Debtor-Defendant, Michael Pak ("Defendant"), to the Plaintiff, Keith Brown ("Plaintiff").

2.      The Plaintiff had worked with the Defendant's brother, Richard Pak, in various internet broadcasting ventures in the late 1990s and early 2000s.

3.      Having reaped significant financial benefits from the sale of Broadcast.com to Yahoo, the Plaintiff was looking for investment opportunities and learned that the Defendant was seeking investors for the acquisition and development of certain parcels of real property located in Frisco, Texas (the "Frisco Property").

4.      The Defendant had no formal finance or legal training.

5.      The Defendant had been a realtor and had owned and operated a few gas stations prior to his interactions with the Plaintiff, but had no prior experience as a real estate developer.

6.      The Plaintiff had no prior experience with real estate investments and engaged in only the briefest of discourses with the Defendant regarding his plans for the Frisco Property.

7.      The Plaintiff did not request, nor did he otherwise receive, any written documentation with regard to the acquisition of the Frisco Property.

8.      The Plaintiff did not request, nor did he otherwise receive, any documentation with regard to the proposed development plans regarding the Frisco Property.

9.      While the Defendant may have described his intentions for the property "in glowing terms," as so characterized by the Plaintiff at trial, the Defendant made no specific oral representation to the Plaintiff about the acquisition or development plans or the precise means by which any interest acquired by the Plaintiff would be held.

10.     However, many of the Plaintiff's Broadcast.com co-workers appeared to be investing their newly-found wealth with the Defendant and the Plaintiff was comfortable making a similar type of investment with his co-worker's brother.

11.    Thus, despite having little (if any) information about the precise manner in which his money would be used, the Plaintiff tendered the sum of $500,000.00 to the Defendant in 2001.[2]

12.    The Defendant admitted unequivocally that the Frisco Property was owned by Pinnacle Developers, L.P. and that he was the general partner of Pinnacle Developers, L.P.[3]

13.    The Defendant admitted unequivocally that the Plaintiff became a limited partner in Pinnacle Developers, L.P. based upon the sum tendered by the Plaintiff.

14.    The Defendant testified that Pinnacle Developers, L.P. owed $4.85 million to Beal Bank under a 2-year construction/development loan at 16% interest.[4]

15.    After the initial investment, reports regarding the progress of the development of the Frisco Property were rare and the Plaintiff acknowledged that he was too busy with his regular job responsibilities to devote much attention to the progress (or the lack thereof) of the real estate development project or his investment in it.

16.    Nevertheless, within a few months, the Plaintiff tendered another $192,000 to the Defendant for use in the partnership business affairs, ostensibly to assist in the satisfaction of accruing interest obligations under the Beal Bank note.

17.    When the prospect of obtaining a Tom Thumb grocery store as an anchor tenant for the Frisco Property development dimmed, and financial pressures mounted, the Defendant, as general partner of the limited partnership, abandoned his efforts to develop the Frisco Property and instead sold to an undisclosed party for an amount that "he thinks" was $5 million.[5]

---

[2] ¶ 5(a) of the Stipulation of Agreed Issues of Fact set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding on January 16, 2015 [dkt #21].

[3] No actual partnership organizational documents were produced by the Defendant in response to proper document requests nor were any introduced at trial, despite his role as the general partner of the limited partnership.

[4] No loan documents executed on behalf of the limited partnership to Beal Bank were produced by the Defendant in response to proper document requests nor were any introduced at trial, despite his role as the general partner of the limited partnership.

[5] No documents executed for this supposed $5 million sale by the limited partnership were produced by the Defendant in response to proper document requests nor were any introduced at trial,

18.  After the sale of the Frisco Property by the partnership, no accounting of the sale proceeds or any other accounting of partnership assets was made by the Defendant as general partner of the limited partnership.

19.  Without any information regarding the use of partnership funds, the Defendant solicited "permission" from the Plaintiff to involve the partnership in a commercial real estate development project in Sachse (the "Sachse Property").

20.  Though the Defendant characterized this as a request for the transfer of the funds invested by the Plaintiff, there is no corroboration that any such funds existed nor is there any corroboration that the limited partnership actually acquired an interest in the Sachse Property.

21.  As a prelude to permitting such a change, the Plaintiff visited the Sachse Property with the Defendant during its initial site work as the Defendant explained in general terms his plans to develop a strip mall and gas station on the Sachse Property.

22.  No evidence was tendered to the Court with regard to how such a "transfer" took place or what governance structures, if any, were utilized to effectuate such a transfer.

23.  The Plaintiff did not request at the time, nor did he otherwise receive, any documentation with regard to the acquisition of the Sachse Property by the limited partnership.

24.  The Plaintiff did not request at the time, nor did he otherwise receive, any documentation with regard to the proposed plan of the partnership to develop the Sachse Property.

25.  During the next several months, the Plaintiff was extremely busy with job responsibilities and made no serious inquiry regarding the limited partnership nor the development of the Sachse Property in general.

26.  Approximately one-half of the Sachse Property development was completed by the partnership but financial problems again ensued and the property was eventually foreclosed upon by the primary lienholder, United Central Bank.[6]

---

despite his role as the general partner of the limited partnership.

[6]  No documents regarding a debtor-creditor relationship between the limited partnership and

27.     The Defendant claims to have personally lost $3 million in the foreclosure upon the Sachse Property by United Central Bank; however, no evidence was tendered by the Defendant to corroborate any such claim.

28.     After the presentment of a demand letter in 2005 by the Plaintiff, among others, to the Defendant regarding the return of all funds previously tendered by the Plaintiff,[7] the Defendant executed a promissory note to the order of the Plaintiff on July 11, 2005, in the original principal amount of $500,000.00.[8]

29.     On November 7, 2012, the Plaintiff forwarded a demand to the Defendant to satisfy the obligations due under the Note.[9]

30.     When the Note obligations were not satisfied despite the demand, the Plaintiff sought recovery of the debt in a lawsuit filed in the 95th Judicial District Court of Dallas County, Texas under Cause No. DC-12-14680-D.[10]

31.     Before the state court lawsuit could be tried, the Debtor-Defendant filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on October 6, 2014.[11]

---

United Central Bank, or detailing the foreclosure process by the Bank, were produced by the Defendant in response to proper document requests nor were any introduced at trial, despite his role as the general partner of the limited partnership.  The lack of information precludes the Court from determining the precise chronology of events.

[7] Ex. 6.   The demand letter credited the Defendant with payments totaling $28,000.

[8] Ex. 1.

[9] Ex. 4.  The chronology of *relevant* events to this dispute that occurred between 2005-2012 is difficult to ascertain from the evidence presented.  The Court is without knowledge of events which might have legitimately extended the limitations period.  Yet the Defendant scheduled the Plaintiff's unsecured claim in the amount of $500,000.00 in his underlying Chapter 7 case without dispute.  In any event, it is the defendant's burden to establish the affirmative defense of limitations, including the accrual date of the plaintiff's claims, under both federal and Texas law.  *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 670 (W.D. Tex. 2013) [applying Fed. R. Civ. P. 8(c)]; *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 688 (E.D. Tex. 2009) [applying Texas law].  No such defense was pled or proven in this case.

[10] ¶ 5(e) of the Stipulation of Agreed Issues of Fact.

[11] *Id. at* ¶ 5(g).

32.     The Defendant listed the Plaintiff in his schedules as the holder of an unsecured claim in the amount of $500,000.00.

33.     The Plaintiff timely filed his complaint for determination of the dischargeability of the debt owed to him on January 7, 2014, seeking recovery of the $664,000 in contributions that he had tendered to the Defendant.

34.     The Plaintiff contends that the debt owed to him is nondischargeable as a debt obtained by false pretenses, a false representation or actual fraud under 11 U.S.C. §523(a)(2)(A) or, alternatively, as a defalcation by a fiduciary under 11 U.S.C. §523(a)(4).

35.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that any debt owed to him by the Defendant was procured under circumstances constituting actual fraud.

36.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant made representations to the Plaintiff that the Defendant knew were false at the time that such representations were made.

37.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant made false representations to the Plaintiff with the intention and purpose of deceiving the Plaintiff.

38.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that he justifiably relied upon any false representations by the Defendant since no such false representations were made to the Plaintiff.

39.     The Defendant, as the sole general partner of Pinnacle Developers, L.P., stood in a formal fiduciary relationship to the Plaintiff under Texas law with regard to the application of all investment amounts received by him from the Plaintiff.

40.     The Defendant, as the sole general partner of Pinnacle Developers, L.P., exercised complete control over the assets and activities of Pinnacle Developers, L.P.

41.     The Plaintiff was a passive investor who wholly depended upon the Defendant for any information regarding the operations of Pinnacle Developers, L.P.

42.     The only explanations supplied by the Defendant regarding the financial activities of the limited partnership were that the Frisco Property was sold "at a loss," the Sachse Property was foreclosed upon, and that everyone connected with the

limited partnership lost money.

43.  Despite repeated requests, the Defendant supplied absolutely no documentation to corroborate any of the financial transactions of the limited partnership or from which the financial status of the limited partnership could otherwise be traced or determined.

44.  The Defendant absolutely failed to supply any detailed financial information regarding the partnership's business activities or the specific use of the Plaintiff's contributions to the partnership.

45.  The Defendant's testimony regarding the financial activities of the partnership was self-serving, uncorroborated and generally unreliable.

46.  A simple explanation of "we all lost money" falls far short of the accounting required of the Defendant as general partner to account for the property of the limited partnership.

47.  The Defendant's failure to maintain information about the partnership's assets and activities, and his refusal to account to the Plaintiff for the funds which the Defendant handled in a fiduciary capacity, cannot be fairly described as mere negligence or inadvertence.

48.  The Defendant's failure to supply any acceptable explanation to the Plaintiff for the partnership's activities or financial status at any time manifested a conscious disregard of the substantial and unjustifiable risk that his failure and/or omissions in that regard constituted a breach of his fiduciary duty to the limited partnership and to the Plaintiff as a limited partner.

49.  The Defendant's failure to supply any acceptable explanation to the Plaintiff for the partnership's activities or financial status at any time manifested an extreme departure from the standard of ordinary care imposed upon him as the general partner of the limited partnership.

50.  The Defendant's failure to supply any acceptable explanation to the Plaintiff for the partnership's activities or financial status at any time created such a significant and obvious danger of a breach of the fiduciary duty imposed upon him as general partner that he undoubtedly was aware of such danger and yet chose to take no remedial action.

51.  In light of his status as the sole general partner of this limited partnership, the

-7-

Defendant's failure to provide financial information regarding the limited partnership to the Plaintiff or to supply any acceptable explanation to the Plaintiff for the partnership's activities or financial status at any time was grossly reckless.

52. The failure of the Defendant as the sole general partner of Pinnacle Developers, L.P., to account for the $664,000.00 tendered to him by the Plaintiff for the benefit of Pinnacle Developers, L.P., constituted a breach of his fiduciary duty to the Plaintiff as a limited partner.

53. The Plaintiff suffered injury as a result of the Defendant's breach of his fiduciary duty to the Plaintiff as a limited partner.

54. The failure of the Defendant as the sole general partner of Pinnacle Developers, L.P., to account for the $664,000.00 tendered to him by the Plaintiff for the benefit of Pinnacle Developers, L.P., constituted a defalcation.

55. The Note executed by the Defendant for the benefit of the Plaintiff provided that:

> Holder's Costs and Attorneys' Fees.  Maker [Defendant] further agrees to pay upon demand any and all costs incurred by the holder of this Note from and after the date of this Note in connection with this Note, including, without limitation, (a) all attorneys' fees, expenses and costs incurred (i) to prosecute or enforce any claim, obligation, agreement or right arising under, or out of, this Note, or any transaction related to or connected with the Note, or (ii) to enforce or collect this Note, whether in connection with any proceedings or action in bankruptcy court, probate court, or any other court, or whether or not any legal action or proceeding is commenced to prosecute or enforce any such claim, obligation, agreement, or right, or to enforce or collect this Note . . . .[12]

56. The Plaintiff issued a proper demand for payment of the Note obligations through the services of a licensed attorney on November 7, 2012.

57. Though the Defendant generally acknowledged the receipt of the November 7, 2012 demand letter, the Plaintiff did not establish the precise date upon which the Defendant received the demand.

---

[12]  Ex. 1 at ¶ 8.

58.     The Defendant failed to tender all amounts due under the Note within thirty days of the presentment of the demand for payment.

59.     The Plaintiff incurred reasonable and necessary attorneys' fees in the amount of $74,112.50 to enforce the claim evidenced by the Note, including services rendered in the prosecution of this adversary proceeding.

60.     The Plaintiff will reasonably incur additional attorneys' fees in the amount of $20,000 in the event of an appeal to the United States District Court and incur an additional $20,000 in the event of an appeal to the United States Court of Appeals to the Fifth Circuit.

61.     To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.


## CONCLUSIONS OF LAW

*Jurisdiction and Allocation of Judicial Power*

1.      This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523.  This Court has personal jurisdiction over the parties to this adversary proceeding.

2.      This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3.      This Court has the authority to enter a final judgment on an unliquidated claim when determining the dischargeability of that debt in a bankruptcy case.  *Morrison v. Western Builders (In re Morrison)*, 555 F.3d 473, 478–79 (5th Cir. 2009).

4.      Such authority recognized in the Fifth Circuit is consistent with decisions of sister courts of appeal.  *See, e.g., Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir. 1997); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965-66 (6th Cir. 1993); *Abramowitz v. Palmer*, 999 F.2d 1274 (8th Cir. 1993); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991).

5.      The recognized authority of a bankruptcy court to enter a final judgment on an unliquidated claim when determining the dischargeability of that debt in a

bankruptcy case was not impaired by the decision in *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312-13 (Bankr. N.D. Tex. 2011); *Dragisic v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011).

6.      Even if *Stern* had arguably impacted that authority [which it did not],

> the court would be compelled to follow existing Fifth Circuit precedent as set out in *Morrison* . . . as this court cannot ignore (much less 'overrule') existing binding circuit precedent, even if that precedent is thought to be inconsistent with a later decision by the Supreme Court. Only the circuit itself can overrule its own precedents.

> *Christian v. Kim (In re Soo Bin Kim)*, 2011 WL 2708985, at *2 n.2 (Bankr. W.D. Tex., July 11, 2011), as cited in *Carroll*, 464 B.R. at 313 and *Dietz v. Ford (In re Deitz)*, 469 B.R. 11, 21 (B.A.P. 9th Cir. 2012).

7.      The complaint filed by the Plaintiff seeks a determination that the debt which the Defendant admittedly owes to him should be excepted from discharge under 11 U.S.C. §523(a)(2)(A) and §523(a)(4).

8.      In seeking to except the debt owing to him from the scope of the discharge granted to the Defendant, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

9.      All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[13] *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).[14]

---

[13] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

[14] The Fifth Circuit has noted that there are limits to the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor, particularly in situations falling under an exception to dischargeability in a case in which a debtor has committed fraud. *See generally Deodati v. M.M. Winkler & Assoc. (In re M.M. Winkler & Assoc.),* 239 F.3d 746, 751 (5th Cir. 2001).

### *Nondischargeability Under 523(a)(2)(A):  Debt Arising by Fraud, False Pretenses, or False Representation.*

10.    The Plaintiff's Complaint as amended seeks a determination that the debt owed to him should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

11.    11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

>    a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services,  . . .  to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

12.    Section 523(a)(2)(A) encompasses similar but distinct causes of action.  Though other circuits have applied a uniform standard to all §523(a)(2)(A) actions,[15] the Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

13.    The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise . . . related to a future action which does not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense].

---

[15]    *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Servs. v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Servs. v. Alvi (In re Alvi),* 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A).  Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n.8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

14.  To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that:

> (1) the debtor made representations;
> (2) at the time they were made the debtor knew they were false;
> (3) the debtor made the representations with the intention and purpose to deceive the creditor;
> (4) the creditor justifiably relied on such representation; and
> (5) the creditor sustained losses as a proximate result of the representations.

> *Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

15.  A debt may also be declared nondischargeable if it was obtained by false pretenses or by a false representation. While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See FNFS, Ltd. v. Harwood (In re Harwood),* 404 B.R. 366, 389 (Bankr. E.D. Tex. 2007); *Wallace v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007).

16.  In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party."[16] *RecoverEdge L.P.* at 1292-93; *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992); *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under §523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

17.  All substantive aspects of §523(a)(2)(A) are triggered by this complaint.

18.  To prevail on a claim for fraudulent misrepresentation under Texas law, the Plaintiff is required to prove that: (1) a defendant made a material representation

---

[16]  Though the Supreme Court in *Field v. Mans* avoided a determination of the degree of reliance required in a false pretense or false representation case, it is reasonable to assume that justifiable reliance, in addition to reliance in fact, is the correct level of reliance required to sustain a finding of nondischargeability in a false pretense or false representation case. *In re Hernandez*, 208 B.R. 872, 876 n.4 (Bankr. W.D. Tex. 1997).

that was false; (2) the defendant knew that representation was false or made the representation recklessly without any knowledge of the truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and thereby suffered injury. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011).

19.   A knowing and fraudulent falsehood may also arise by nondisclosure when a party with a duty to disclose facts fails to do so. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); cited in *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F.Supp.2d 848, 858 (E.D. Tex. 2004).

20.   "Fraud by omission or non-disclosure is simply a subcategory of fraud because the omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose." *Manon v. Solis*, 142 S.W.3d 380, 387 (Tex. App. – Houston [14th Dist.] 2004, pet. denied) *(citing Schlumberger, 959 S.W.2d at 181).*

21.   The existence of such silence when there is a duty to speak may equate to a misrepresentation of material facts. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986); *Ho v. UT Arlington*, 984 S.W.2d 672, 691 (Tex. App. – Amarillo 1998, pet. denied).

22.   The failure to disclose a material fact when one has a duty to do so is sufficient to establish grounds for nondischargeability for fraud under § 523(a)(2)(A) of the Bankruptcy Code. *Kleindienst v. Horne (In re Horne)*, 2011 WL 350473 at *7 (Bankr. W.D. Tex., Feb. 2, 2011); *Int'l Beauty Products, L.L.C. v. Beveridge (In re Beveridge)*, 416 B.R. 552, 569-70 (Bankr. N.D. Tex. 2009); and cases cited therein.

23.   Because the Court concludes that the Plaintiff has failed to prove by a preponderance of the evidence that the amounts which he tendered to the Defendant for participation in the development activities of the limited partnership were obtained under false pretenses, false representations, or actual fraud, judgment must be rendered for the Debtor-Defendant on this §523(a)(2)(A) claim.

*Nondischargeability Under §523(a)(4):*
*Debt Arising from Fraud*
*or Defalcation in a Fiduciary Capacity.*

24.   The Plaintiff's Complaint as amended seeks a determination that the debt which the Defendant admittedly owes to him should be excepted from discharge under §523(a)(4).

25.   11 U.S.C. §523(a)(4) states that:

> (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .
>
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

26.   The Fifth Circuit has noted "that this discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*, 526 U.S. 1016 (1999) (internal quotations omitted).

27.   Whether the actions of an individual were taken in a fiduciary capacity for the purposes of §523(a)(4) is determined by federal law. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

28.   However, "state law is important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

29.   The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the following terms:

> [T]he concept of fiduciary under §523(a)(4) is narrower than it is under general common law.  Under §523(a)(4), "fiduciary" is limited to instances involving express or technical trusts.  The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed

**-14-**

> prior to, rather than by virtue of, any claimed
> misappropriation or wrong.  Constructive trusts or trusts *ex
> malificio* thus also fall short of the requirements of
> §523(a)(4).
>
> . . .
>
> Statutory trusts, by contrast, can satisfy the dictates of
> §523(a)(4).  It is not enough, however, that a statute purports
> to create a trust:  A state cannot magically transform ordinary
> agents, contractors, or sellers into fiduciaries by the simple
> incantation of the terms "trust" or "fiduciary."  Rather, to meet
> the requirements of §523(a)(4), a statutory trust must (1)
> include a definable res and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

30.    Thus, the trust relationship must exist prior to the creation of, and without
reference to, the indebtedness in question.  *Angelle v. Reed (In re Angelle)*, 610
F.2d 1335, 1338 (5th Cir. 1980).

31.    "[T]he Fifth Circuit recognizes that the 'technical' or 'express' trust requirement is
not limited to trusts that arise by virtue of a formal trust agreement, but includes
relationships in which trust-type obligations are imposed pursuant to statute or
common law."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393
(Bankr. E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*,
898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011 (1993)).

32.    Thus, federal courts in this context have "not hesitated to conclude that debts
arising from misappropriation by persons serving in a traditional, pre-existing
fiduciary capacity, as understood by state law principles, are nondischargeable."
*Gupta*, 394 F.3d at 350.


*Fiduciary Duty - Texas Limited Partnerships*

33.    "It is the duty of a fiduciary to deal openly, and to make full disclosure to the party
with whom he stands in such relationship.  One occupying a fiduciary relationship
to another must measure his conduct by high equitable standards, and not by the
standards required in dealings between ordinary parties."  *Kinzbach Tool Co. v.
Corbett-Wallace Corp.*, 138 Tex. 565, 573, 160 S.W.2d 509, 513-14 (1942)
(citations omitted).

34.   It is axiomatic under Texas law that a general partner of a limited partnership owes the highest of fiduciary duties to its limited partners.  *Harwood,* 637 F.3d at 620; *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App. – Dallas 2010, no pet.); *Zinda v. McCann Street, Ltd.*, 178 S.W.3d 883, 890 (Tex. App. – Texarkana 2005, pet. denied).

35.   "Under Texas law, managing partners owe trust obligations to the partnership, having a duty of loyalty and due care as well as being under an obligation to discharge their duties in good faith and in reasonable belief that they are acting in the best interest of the partnership."  *McBeth v. Carpenter*, 565 F.3d 171, 177 (5th Cir. 2009).

36.   "In a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust." *Id.*

37.   "Included in the fiduciary duty which the trustee (general partner) owes to the beneficiaries (limited partners) is the duty of loyalty.  Not only is it his duty to administer the partnership affairs <u>*solely*</u> for the benefit of the partnership, he is not permitted to place himself in a position where it would be for his own benefit to violate this duty." *Crenshaw v. Swenson*, 611 S.W.2d 886, 890 (Tex. Civ. App.– Austin 1980, writ ref'd n.r.e.) (emphasis added).

38.   That fiduciary duty also encompasses a "duty of full disclosure of all matters affecting the partnership."  *Hughes v. St. David's Support Corp.*, 944 S.W.2d 423, 425-26 (Tex. App. – Austin 1997, writ denied) [general partner in master limited partnership had fiduciary duty to limited partners to disclose sale (to itself) of partnership's interest in other operating partnerships].

39.   In other words, conduct of a general partner in a limited partnership "must be measured by standards exacting the utmost fidelity from a general partner who is in complete control of assets and affairs of a limited partnership." *Crenshaw,* 611 S.W.2d at 890 *(citing MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944)).

40.   This fiduciary duty imposed upon the general partner of a limited partnership as recognized in the foregoing Texas jurisprudence meets the express trust requirement under 11 U.S.C. §523(a)(4) as a trust-type obligation imposed pursuant to common law.  *Mullen v. Jones (In re Jones)*, 445 B.R. 677, 711 (Bankr. N.D. Tex. 2011).

41.   As the sole general partner of Pinnacle Developers, L.P., the Defendant stood in a fiduciary relationship with the limited partnership and its limited partners.

42.   "The elements of a claim for breach of fiduciary duty are: (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in either (a) an injury to the plaintiff; or (b) a benefit to the defendant." *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 642 (Tex. App. – Dallas 2012, pet. denied); *Graham Mortg.*, 307 S.W.3d at 479; *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. – Dallas 2006, pet. denied).

43.   Restitution of one's financial contributions, in lieu of a damage recovery, is a recognized avenue of recovery for breach of fiduciary duty under Texas law. *Bennett*, 989 F.2d at 790-91 (citing *Watson v. Limited Partners of WCKT, Ltd.,* 570 S.W.2d 179, 182 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.)).  In seeking such a remedy, the "suit is not one for damages as such, but to recover money had and received. . . . [I]n such situation the fiduciary must account for all he has received." *Id*.

*Defalcation*

44.   Until recently, a defalcation under §523(a)(4) in this circuit required the establishment of a "willful neglect of duty" that was "essentially a recklessness standard." *Schwager v. Fallas (In re Schwager),* 121 F.3d 177, 185 (5th Cir. 1997).

45.   Willfulness in that context had been "measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known." *Harwood*, 637 F.3d at 624 (citing *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001)).

46.   In 2013, however, the United States Supreme Court rejected an objective recklessness standard in favor of a heightened culpability standard for defalcation in this context.

47.   In a unanimous decision in *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013), the Supreme Court declared that "defalcation" for the purposes of §523(a)(4) "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 1757.

**-17-**

48.     According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong." *Id*. at 1759.  Such an intentional wrong encompasses not only conduct which the fiduciary knows is improper, but it also encompasses reckless conduct, such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty.  *Id*.

49.     In seeking to require a higher degree of fault for a finding of a defalcation, similar to its "statutory neighbors" of fraud, embezzlement and larceny listed in §523(a)(4), without imposing an actual requirement of specific intent to establish a defalcation, the Supreme Court adopted a standard of recklessness "of the kind set forth in the Model Penal Code §2.02(2)(c)."[17]

50.     This "severe recklessness" standard tracks the showing required to demonstrate scienter in federal securities cases.[18]

51.     Utilizing the MPC definition of recklessness and analyzing the defalcation standard to scienter determinations in federal securities cases is an effort to exclude that type of recklessness arising as a consequence of mere negligence or inadvertence.

52.     As recognized in securities law cases in the Fifth Circuit, this type of "severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involved not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers [of securities] which is either known to the defendant

---

[17]   Model Penal Code §2.02(2)(c) states that:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

MODEL PENAL CODE § 2.02(2)(c) (Thomson Reuters, Westlaw through 2015).

[18]   Scienter, in the context of securities fraud, is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

or is so obvious that the defendant must have been aware of it." *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).

53.    Thus, such a heightened culpability requirement will ensure that the "harsh sanction of nondischargeability is reserved for those who exhibits some portion of misconduct." *Hyman*, 502 F.3d at 68-69.

54.    As a result of the Defendant's extreme recklessness in failing to account to the Plaintiff for the limited partnership property  entrusted to his care as the general partner of Pinnacle Developers, L.P., as set forth in greater detail in the findings of fact, the debt owed by the Defendant, Michael Pak, to Plaintiff, Keith Brown, in the amount of $664,000.00 is therefore excepted from discharge as a debt for a defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. §523(a)(4).

*Attorney's Fees, Court Costs, and Interest*

55.    In adherence to the so-called "American Rule," attorneys' fees are not taxable as costs or recoverable as damages in an adversary proceeding unless such fees are authorized by statute or through an enforceable contract between the parties. *First United Bank & Trust v. Buescher (In re Buescher)*, 491 B.R. 419, 439 (Bankr. E.D. Tex. 2013); *Bell v. Claybrook (In re Claybrook),* 385 B.R. 842, 854 (Bankr. E.D. Tex. 2008).

56.    It is appropriate for a bankruptcy court to award statutory attorney's fees available under state law in dischargeability litigation when that litigation also seeks the establishment of liability of a debtor-defendant under that state statutory scheme, *Cohen v. de la Cruz,* 523 U.S. 213, 221 (1998);[19] *Synergeering Group, LLC v. Jonatzke (In re Jonatzke)*, 478 B.R. 846, 869-70 (Bankr. E.D. Mich. 2012).[20]

57.    There is no federal statute that would authorize any award of attorney's fees to the Plaintiffs under these circumstances.

---

[19]   *Cohen* imposed liability, including the imposition of statutory attorney's fees, under the New Jersey Consumer Fraud Act.

[20]   The *Jonatzke* court observed:  "Thus, if a bankruptcy court liquidates a claim and also determines its dischargeability under the Bankruptcy Code, the liquidated claim may include an attorney's fee component only if the contract or a statute provides for such an award." *Jonatzke*, 478 B.R. at 870-71.

58. As for recovery of attorney's fees under Texas law, Chapter 38 of the Texas Civil Practice and Remedies Code authorizes a recovery of attorney's fees in certain types of lawsuits, such as suits on a sworn account or an oral or written contract. See 2A TEX. CIV. PRAC. & REM. CODE §38.001, *et seq*. (Vernon 2008).[21]

59. "A party seeking to recover attorney's fees [under Texas law] carries the burden of proof. Although courts should consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees as 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

60. The Plaintiff is entitled to recover reasonable and necessary attorneys' fees in the amount of $74,112.50 to enforce the claim evidenced by the Note, including services rendered in the prosecution of this adversary proceeding, plus an additional amount of $20,000 in the event of an appeal to the United States District Court, and an additional amount of $20,000 in the event of an appeal to the United States Court of Appeals to the Fifth Circuit.

61. With regard to attorney's fees and accrued interest in the context of determining the dischargeability of a particular debt, "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt. When the primary debt is nondischargeable . . . , the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996); *see also Cohen,* 523 U.S. at 218.

62. Court costs of $293.00 incurred in this adversary proceeding are awarded to the Plaintiff and assessed against the Defendant.

63. The Plaintiff is entitled to an award of pre-judgment interest on the respective judgment sums due and owing to him by the Defendant. *Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 345 (Tex. App. – Texarkana 1999, no

---

[21] Texas law provides that a party may recover reasonable attorney's fees on a claim based on an oral or written contract by complying with the following requirements: (1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered within thirty days of presentment. 2A TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (Vernon 2008). No particular form of presentment is required, and it may be written or oral. *See Harrison v. Gemdrill Intern., Inc.*, 981 S.W.2d 714, 719 (Tex.App.– Houston [1st Dist.] 1998, pet. denied) ["[A]ll that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim."].

pet.).

64. Under Texas law, accrual of pre-judgment interest begins "on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and [ends] on the day preceding the date judgment is rendered." 3 Tex. Fin. Code Ann. §304.104 (Vernon 2006).

65. Though the Defendant generally acknowledged the receipt of the November 7, 2012 demand letter, the Plaintiff did not establish the precise date upon which the Defendant received the demand. Thus, the Court will presume a three-day delivery period through the use of normal mailing channels.

66. Thus, the 180-day period will be deemed to have commenced on November 10, 2012, thereby concluding on May 9, 2013.

67. Accordingly, pre-judgment interest on this indebtedness will accrue from May 9, 2013 until the date preceding the date of judgment at the rate of 5% per annum.[22]

68. Thus, the Plaintiff is entitled to an award of pre-judgment interest in the amount of $63,762.19.

69. The Plaintiff is entitled to post-judgment interest on his claim at a rate of 0.25%. 28 U.S.C. §1961.

### *CONCLUSION*

70. Thus, the Plaintiff, Keith Brown, shall recover from the Defendant, Michael Pak, the sum of $ 664,000.00, plus pre-judgment interest in the amount of $63,762.19, plus an award of reasonable attorney's fees in the amount of $74,112.50,[23] plus court costs awarded in this action in the amount of $293.00, for an aggregate award of $802,167.69, together with post-judgment interest upon such aggregate sums at the current federal post-judgment interest rate of 0.25% until paid. Such indebtedness is declared to be nondischargeable pursuant to 11 U.S.C. §523(a)(4).

---

[22] *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 532 (Tex. 1998); 3 Tex. Fin. Code Ann. §304.104 (Vernon 2006)[regarding date of accrual]; 3 Tex. Fin. Code Ann. §§ 304.003 & 304.103 (Vernon 2006)[regarding interest rate].

[23] The Plaintiff is also awarded contingent attorney's fees based upon a possible appeal. *See* Conclusion ¶ 60.

71.    All other relief requested in the Plaintiff's Complaint in the above-referenced adversary proceeding shall be denied.

72.    To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

73.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 04/10/2015

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

NOT

FOR

PUBLICATION